UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT STRICKLAND, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1909 |
| | § | |
| BAE SYSTEMS TACTICAL VEHICLE | § | |
| SYSTEMS LP, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above-referenced Title VII sexual harassment case is Defendant BAE Systems Tactical Vehicle Systems LP's. (BAE) Partial Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 36).  Upon review and consideration of the motion, the response (Doc. 38), the reply (Doc. 39), the record, and the applicable law, the Court concludes that the motion should be granted.

## I.   Background

BAE is a Delaware-based limited partnership that produces and services armored vehicles for the Armed Forces of the United States.  Am. Compl., Doc. 1-5 ¶¶ 10–11.  In March 2012, BAE hired Plaintiff Robert Strickland, a certified welding inspector, under a renewable six-month contract.  *Id.* ¶¶ 18–20.  Strickland was hired to inspect welding on armored vehicles in Kuwait.  *Id.* ¶ 18.  In addition to payment, BAE provided Strickland with transportation and lodging.  *Id.* ¶ 23.  Upon arrival his in Kuwait, BAE assigned Strickland to a shared housing unit with his supervisor, Alan Stallings.  *Id.* ¶ 23.  Strickland alleges that immediately upon his arrival, Stallings began sexually harassing him.  *Id.* ¶ 25.  Specifically, on numerous occasions Stallings "touched [Strickland] inappropriately in his bathroom while [he was] shaving" and

made "comments about [his] body." *Id.* Strickland demanded that Stallings stop, but his "unwanted advances" persisted at the apartment, at the worksite, and during the commute in between. *Id.* ¶ 26. Strickland alleges that "Stallings's inappropriate behavior was also directed toward Marvelous," Strickland's wife, during her regular visits to Kuwait. *Id.* ¶ 29. Stallings allegedly exposed himself to Marvelous on several occasions and she complained to Strickland.

On May 24, 2012, Strickland confronted Stallings and asked him to stop harassing Marvelous. *Id.* ¶ 30. Stallings allegedly refused. *Id.* After the harassment persisted for several weeks, Strickland complained to Stallings's supervisor, Chris [last name unknown], who recommended Strickland attempt to resolve the matter with Stallings directly. *Id.* ¶ 31. On June 6, 2012, Strickland confronted Stallings again at BAE's main office and again asked Stallings to stop harassing him and Marvelous. *Id.* ¶ 33. Their discussion escalated into a heated argument whereupon, Strickland claims, Stallings physically threatened him. *Id.* ¶¶ 33–35. Strickland then declared his intent to file a formal complaint with BAE and the government and Stallings replied, "if you file the compliant with the government your position with BAE would be terminated." *Id.* Later that afternoon, BAE's Kuwait Site leader, Gus Saldivar, approached Strickland to discuss his altercation with Stallings. *Id.* ¶ 37. Saldivar explained that that "Stallings would likely be dismissed for his actions" and that Strickland would immediately receive a new housing assignment. *Id.* ¶¶ 37–38. Strickland claims he did not receive a new housing assignment until June 8 and was forced to make alternative housing arrangements at his own expense in the meantime. *Id.* ¶¶ 39–40. Even after Strickland ceased residing in the apartment, Stallings continued to taunt and stare at Strickland in the workplace. *Id.* ¶ 42.

On June 9, 2012, prior to Strickland's departure on approved leave from June 11 to June 23, Strickland approached Saldivar to discuss the ongoing situation between him and Stallings.

*Id.* ¶ 43. When Strickland entered the office, Saldivar allegedly laughed and asked him, "What do you want now?" *Id.* Strickland informed Saldivar of his leave plans and stated he "expected an appropriate resolution [of the situation with Stallings] upon his return." *Id.* Saldivar said nothing and laughed. *Id.* On June 19, 2012, during his approved leave, BAE informed Strickland via email that his employment with BAE had been terminated that he should not return to Kuwait. *Id.* ¶ 48.

Stallings timely filed a complaint with the Equal Employment Opportunity Commission (EEOC) on September 28, 2012 and received a Notice of Right to Sue on November 21, 2012. *Id.* ¶¶ 5–6. On February 4, 2013, Robert and Marvelous Strickland filed the instant suit in Idaho state court against BAE, Stallings, and Saldivar alleging sexual harassment, hostile work environment, retaliation, and wrongful termination in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e, *et seq.*[1] Pl.'s Original Compl., Doc. 1-3. Plaintiffs also asserted state-law claims for assault and intentional infliction of emotional distress, battery against Strickland, and sexual harassment against Marvelous under Idaho Code § 67-5909. *Id.* On March 25, 2013, Defendants removed the case to the Federal District Court for the District of Idaho, and on June 10, 2013, the case was transferred to the Southern District of Texas pursuant to 28 U.S.C. §§ 1406(a) and 1631 in order to cure a personal jurisdiction defect. Mem. Decision & Order, Doc. 16 at 11–12. After the case was transferred, the parties stipulated to the dismissal of Marvelous's claims against all Defendants, Strickland's claims against the individual Defendants, and Strickland's claim of intentional infliction of emotional distress pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Stipulation of Voluntary Dismissal of Certain Claims and Parties (Doc. 51).

---

[1] Sexual harassment and hostile work environment are not independent claims under Title VII; rather, hostile work environment is a characterization of a sexual harassment claim. Similarly, "wrongful termination" is a general description of the type of conduct to be prevented by Title VII and not an independent cause of action thereunder.

BAE now moves for partial judgment on the pleadings on Strickland's claims of sexual harassment, assault and battery pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Doc. 36 at 1. BAE does not move to dismiss Strickland's Title VII retaliation claim. *Id.* at 3. BAE argues that it is entitled to partial judgment on the pleadings because Strickland's allegations either fail as a matter of law or contain insufficient facts to show he is entitled to relief. *Id.* at 2.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(c) states, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(C). A motion brought pursuant to Rule 12(c) is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

"A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6)." *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 209–10 (5th Cir. 2010). To avoid dismissal under Rule 12(b)(6) a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2008)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the facts fail to "nudge [the] claims across the line from conceivable to plausible, [then the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2009). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Where "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 670.

## III.   Discussion

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's…sex." 42 U.S.C. § 2000e—2(a)(1). This antidiscrimination provision is also triggered when a hostile work environment is created through harassment. *See EEOC v. Boh Bros. Contr. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (citations omitted). Since Congress intended to address the full range of disparate treatment of men and women in employment, Title VII's prohibition of employment discrimination based on sex includes a prohibition on same-sex sexual harassment. *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78–81 (1998)). Title VII, however, is not a general workplace civility code. *Id.* at 454–55 (citing *Oncale*, 523 U.S. at 80). It prohibits only harassment based on discrimination because of sex that is severe enough to alter the conditions of a victim's employment. *Oncale*, 523 U.S. at 80–81.

An employer's liability for harassment under Title VII depends on the status of the harasser.

> If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling the working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective

opportunities that the employer provided.  Under this framework, therefore, it matters whether a harasser is a "supervisor" or simply a co-worker.

*Boh Bros.*, 731 F.3d at 452.

Where, as here, the harassment claim is based on the conduct of a supervisor, a plaintiff must show: (1) that the plaintiff is a member of a protected class; (2) that he was subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic; and (4) that the harassment affected a term or condition of employment.  *Id.* at 453 (citing *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 162–63 (5th Cir. 2007)).  "To affect a term, condition, or privilege of employment, the harassing conduct must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* (citing *Aryain v. Wal–Mart Stores of Tex. L.P.*, 534 F.3d 473, 479 (5th Cir. 2008) (internal quotation marks and alterations omitted)).  "The environment must be deemed 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'"  *Aryain*, 534 F.3d at 479 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

In the Fifth Circuit, cases of same-sex discrimination are analyzed under a two-step inquiry.  *Id.*  First, a court must consider "whether the alleged conduct was sex discrimination," then, the court decides "whether the conduct meets the standard for a *quid pro quo* or a hostile work environment claim."  *Id.* (citing *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002)).  Same-sex sexual harassment is actionable under Title VII if the plaintiff can show the "'conduct at issue was not merely tinged with offensive connotations, but actually constituted *discrimination* because of sex.'"  *La Day*, 302. F.3d at 478 (internal citation omitted) (emphasis in original). The Supreme Court has laid out three non-exclusive "evidentiary paths" for a plaintiff to establish that discrimination was based on sex:

> (1) a plaintiff may show that the harasser was homosexual and motivated by sexual desire; (2) a plaintiff may show that the harassment was framed 'in such sex-specific and derogatory terms…as to make it clear that the harasser [was] motivated by a general hostility to the presence' of a particular gender in the workplace; and (3) a plaintiff may 'offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*Boh Bros.*, 731 F.3d at 455.   Other paths, such as proof of discrimination based on sex-stereotyping, are also available.   *See, e.g., id.* at 456.

At the current stage, Strickland need not utilize any of these methods, as he has no evidentiary burden.   He must, however, plead sufficient facts to state a plausible claim for same-sex sexual harassment that constituted discrimination because of sex.   In its motion for judgment on the pleadings, BAE argues that Strickland fails to show that any of the alleged harassment was "based on the fact that he [is] male."   Doc. 36 at 13.   BAE further contends that any assertion made by Strickland that the harassment was based on his sex is belied by the allegations that Marvelous was subject to the same harassing conduct.   *Id.* at 14.

Strickland does not allege that Stallings was motivated by a general hostility towards men, nor does he offer evidence of how other employees were treated in a "mixed-sex workplace."   Instead, he uses the first of the earlier-described evidentiary paths and claims that he was targeted because of Stallings's "sexual orientation (homosexual)."   Doc. 38 at 11–12. Two types of evidence are most credible for establishing homosexuality, (1) evidence that the harasser "intended to have some kind of sexual contact with the plaintiff rather than to humiliate him for reasons unrelated to sexual interest," and (2) evidence that the harasser "made same-sex sexual advances to others, especially employees."   *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012).   Here, Strickland has not alleged sufficient facts to allow the Court to conclude that Stallings was homosexual.   He does not allege that Stallings intended to have sexual contact with him, and his only allegations regarding Stallings's harassment of others were

directed at Marvelous—a woman and a non-BAE employee, thereby undermining his claim that he was harassed because of his sex.  Accordingly, the Court finds there are insufficient facts for Strickland to plausibly claim he was discriminated against on the basis of sex.

Likewise, Strickland has not offered sufficient facts to show that the alleged harassment was objectively unreasonable.  The majority of Strickland's allegations are little more than a recitation of the claim.  Repeatedly, he states simply that Stallings "sexually harassed" him.  *See e.g.,* Doc. 1-5 ¶¶ 25, 26, 31, 32.  The only specific allegations that Strickland makes to support his sexual harassment claim are that: 1) "Stallings touched [him] inappropriately in his bathroom while shaving without [his] consent;" and 2) "Stallings also made inappropriate comments about [his] body."  Doc. 1-5 ¶ 25.  Strickland provides no details about where on his body Stallings touched him or what inappropriate comments he made; nor does he explain how the alleged touching or comments were inappropriately sexual.  Without more specific allegations, the Court is unable to determine that the alleged discrimination was objectively offensive.  *Compare Robertson v. Siouxland Cmty. Health Ctr.,* 938 F. Supp. 2d 831, 850 (denying defendant employer's motion to dismiss plaintiff's claims of same-sex sexual harassment where the evidence that the harasser was motivated by a sexual desire included: (1) defendant asking plaintiff "how do you pick up a gay person;" (2) defendant telling plaintiff that she "was considering hooking up with a woman;" and (3) defendant stating that her husband believed that she was sexually attracted to plaintiff and that this was the basis for her divorce).  The Court concludes Strickland has failed to make out a prima facie case for sexual harassment under Title VII and BAE's motion for judgment on the pleadings on Strickland's Title VII claim for sexual harassment is granted and his claim is dismissed.

Generally, a plaintiff should be given one opportunity to amend his complaint before a

court dismisses his claims with prejudice.  *Great Plains Trust Co.*, 313 F.3d at 329.  The facts that form the basis of Strickland's claim are within his personal knowledge and will not require additional discovery.  As such, Strickland should be able to easily amend his complaint to add factual content that allows the Court to infer that he is entitled to relief.  The Court grants him leave to do so, consist with this Opinion, within twenty (20) days.

Without a valid federal cause of action, the Court dismisses Strickland's pendent state-law causes of action for assault and battery without prejudice.  *See* 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over [pendent state-law claims] if…the district court has dismissed all claims over which it has original jurisdiction."); *see also Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992) (noting that when federal claims are eliminated at an "early stage" of the litigation the district courts has "a powerful reason to choose not to continue to exercise jurisdiction").

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that BAE's motion for judgment on the pleadings (Doc. 36) is **GRANTED** and Strickland's Title VII sexual harassment claim, in addition to his state-law claims for assault and battery, is dismissed without prejudice and with leave to amend consistent with this Order within twenty (20) days.

SIGNED at Houston, Texas, this 15th day of September, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE